IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DELIA I. HOSMER,

                    Plaintiff,

         vs.                                    Civil Action 2:13-CV-879
                                                Judge Frost
                                                Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

REPORT AND RECOMMENDATION

I.    Introduction and Background

     This is an action instituted under the provisions of 42 U.S.C. §405(g)
for review of a final decision of the Commissioner of Social Security
denying plaintiff's application for supplemental security income. This
matter is now before the Court on plaintiff's *Statement of Errors*, Doc.
No. 12,[1] the Commissioner's *Memorandum in Opposition*, Doc. No. 17, and
plaintiff's *Reply*, Doc. No. 18.

     Plaintiff Delia I. Hosmer filed her current application for benefits
on November 20, 2009, alleging that she has been disabled since September
16, 2009, as a result of depression, epilepsy, narcolepsy and back problems.
*PAGEID* 238. The application was denied initially and upon reconsideration,
and plaintiff requested a *de novo* hearing before an administrative law
judge.

     An administrative hearing was held by videoconference on February 23,
2012. Plaintiff, represented by counsel, appeared and testified, as did
Natalie Tessari, who testified as a vocational expert. In a decision dated
March 1, 2012, the administrative law judge concluded that plaintiff was

---

[1] Plaintiff's 39-page *Statement of Errors* does not comply with the local rules of
this Court. *See* S.D. Ohio Civ. R. 7.2(a)(3).

1

not disabled within the meaning of the Social Security Act. *PAGEID* 79-98. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 12, 2013. *PAGEID* 54-58.

Plaintiff was 51 years of age on the date of the administrative decision. *PAGEID* 96, 233. She has a high school education, *PAGEID* 241-42, and past relevant work experience as a cashier, custodian, cleaner, and automobile parker. *PAGEID* 224, 239.  She has not engaged in substantial gainful activity since November 20, 2009, the date her application was filed. *PAGEID* 84.

## II.  Plaintiff's Testimony[2]

Plaintiff testified at the administrative hearing that her last job as an automobile parker ended in 2009 when she was hospitalized for pleurisy but failed to notify her employer. *PAGEID* 109.   She could not have continued the job, however, because of her pain. *PAGEID* 110-11. She filed her current application for benefits approximately one month later.

Plaintiff underwent injections for back pain but the procedures did not alleviate the pain for any appreciable period of time. *PAGEID* 111-12. Physical therapy was also ineffective. *PAGEID* 113.   Pain medication prescribed by her treating physician, Lortab, is effective if she "does nothing." *PAGEID* 115-16. Plaintiff also suffers from narcolepsy; Provigil had been helpful in controlling her symptoms but she can no longer afford the medication. *PAGEID* 116.

---

[2] Because resolution of the issues presented in the case does not turn on the vocation evidence, the Court will not summarize that evidence.

In 2011, plaintiff began seeing a mental health counselor, Jannat Wolfe, LISW, upon referral by her treating family practitioner, Katie Able, D.O. *PAGEID* 119.  Counseling has "helped [her] a lot . . . ." *PAGEID* 121.

Plaintiff estimated that she can lift and carry 1-2 pounds and can sit, stand, and walk for approximately 30 minutes.  *PAGEID* 122-23.

On a typical day, plaintiff sleeps, watches TV and talks on the telephone. *PAGEID* 124. She makes simple meals. *PAGEID* 122.  She takes 30 to 45 minutes to do dishes because she must sit down take breaks. *Id.* She can dress herself but must sit down to do so. *PAGEID* 125. She shops, but has difficulty doing so; she tries to make her trips as short as possible. *Id.*

## III. The Evidence of Record

### Physical Impairments:

A June 2009 MRI of the lumbar spine evidenced bilateral facet degenerative changes at L5-S1, greater on the right with possible minimal impingement of the proximal aspect of the left S1 nerve root.  *PAGEID* 477.

Plaintiff began treatment with nurse practitioner Beverly Phillips, C.N.P., at Family Healthcare, Inc., on December 15, 2009.  Ms. Phillips diagnosed narcolepsy, GERD, depression, neuropathic pain, chronic pain related to degenerative joint disease and memory loss. *PAGEID* 508. On January 14, 2010, plaintiff complained to Ms. Phillips of right-sided head pain and left-sided back pain. Ms. Phillips diagnosed arthralgias, depression, altered mentation, neuritis and chronic degenerative joint disease.  *PAGEID* 506. On January 27, 2010, plaintiff rated her back pain at 8 on a 0-10 scale. Ms. Phillips diagnosed hypersomnolence, chronic low back pain and altered memory.  *PAGEID* 510.

3

An April 10, 2010 pulmonary function study was interpreted as normal. *PAGEID* 539-44.

In May 2010, Diane Manos, M.D., reviewed the file for the state agency. *PAGEID* 545-52. According to Dr. Manos, plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently; she could sit, stand or walk up to 6 hours in an 8-hour workday. *PAGEID* 546.  She could frequently climb ramps or stairs, balance, kneel or crawl and could occasionally climb ladders, ropes and scaffolds, stoop, and crouch. *PAGEID* 547. Plaintiff should avoid all exposure to hazards, including unprotected heights and commercial driving because of her untreated narcolepsy. *PAGEID* 549. Dr. Manos found plaintiff's allegations of pain to be only partially credible. *PAGEID* 550. In August 2010, state agency physician Willa Caldwell, M.D., affirmed Dr. Manos' assessment except that Dr. Caldwell would limit plaintiff from all climbing of ladders, ropes and scaffolds. *PAGEID* 581.

From May through December 2010, Ms. Phillips noted continued complaints of pain at 8 or 9 on a 10-point scale. Ms. Phillips diagnosed fibromyalgia/neuropathic pain, GERD, depression, TMJ and chronic pain related to degenerative joint disease.  *PAGEID* 561-62, 587-92.

In a December 2010 assessment of plaintiff's ability to engage in work-related activities, Ms. Phillips opined that plaintiff can lift 1-2 pounds only occasionally and can stand, walk and sit for less than 30 minutes in an eight hour work day; plaintiff must lie down 1-2 times per day.  From a mental standpoint, plaintiff is substantially affected in her ability to understand, remember, and carry out simple instructions, make simple work-related decisions, respond appropriately to supervisors and co-workers and deal with changes in a routine work setting. According to Ms. Phillips, plaintiff could perform these activities on a sustained basis

4

no more than 3 days per week and for fewer than three consecutive weeks per month. *PAGEID* 583-85.

In a basic medical form dated March 29, 2011, John R. Ellison, M.D., a physician at Family Healthcare, Inc., examined plaintiff, *PAGEID* 632, and diagnosed GERD, hyperlipidemia, anxiety, depression, narcolepsy, chronic low back/neck pain, and prior thyroid surgery. *PAGEID* 594. Dr. Ellison noted decreased range of motion and tenderness to palpation in the thoracolumbar spine as well as pain upon motion. *PAGEID* 632. Dr. Ellison characterized plaintiff as pain focused; her movements were exaggerated throughout the examination. *PAGEID* 595. According to Dr. Ellison, plaintiff could stand/walk for one hour and sit for four hours in an eight hour work day. He also characterized plaintiff as "unemployable" due to pain and safety concerns. *Id.*

Family practitioner Katie Able, D.O., treated plaintiff from June through December 2011. *PAGEID* 597-601, 610-12, 627-28. Plaintiff reported that her anti-depressant, Celexa, was not effective. She also complained of headaches, constant pain in her back, narcolepsy, and breathing problems. Dr. Able diagnosed chest pain, major depressive disorder, narcolepsy and low back pain/lumbosacral degenerative disc disease with left-sided radiculopathy. *Id.* In August 2011, Dr. Able listed plaintiff's diagnoses as narcolepsy, L5-S1 degenerative disc disease, GERD, major depressive disorder, neuropathic pain, and C5-6 degenerative disc disease. According to Dr. Able, plaintiff could lift five pounds occasionally and one to two pounds frequently; she could stand and walk for less than two hours in an eight-hour work day, and could sit for four hours in an eight-hour work day (with frequent breaks). Plaintiff would need to lie down two to three times during an eight-hour work day.

5

Plaintiff's mental impairment would substantially affect her ability to understand, remember, and carry out instructions, respond appropriately to supervisors and co-workers and deal with changes in a routine work setting. Plaintiff could perform these activities on a sustained basis no more than 3 days per week and fewer than three consecutive weeks per month. *PAGEID* 603-05.

A September 2011 MRI of plaintiff's lumbar spine indicated moderate left and mild right neural foraminal narrowing at L5-S1 secondary to grade one anterolisthesis of L5 relative to S1, a disc bulge and severe degenerative bilateral facet arthropathy. There was also bilateral facet arthropathy at L4-5.  *PAGEID* 607-08.

**Mental Impairment:**

Plaintiff was consultatively examined by psychologist Paul A. Deardorff, Ph.D., on February 3, 2010 on behalf of the state agency. *PAGEID* 514-19. Plaintiff reported disability due to back pain that extends into her legs as a result of degenerative disc disease, fatigue as a result of narcolepsy, sharp pain in her right temple which extends into her neck, right shoulder pain, anxiety, depression, symptomatology somewhat suggestive of post-traumatic stress disorder, panic attacks, and avoidant behavior. Plaintiff also reported that she gets along well with her two sons but that she does not see them often. *PAGEID* 514. Plaintiff appeared anxious and depressed. *PAGEID* 515. Her short term memory was weak and her attention and concentration skills were not strong. *PAGEID* 517. Dr. Deardorff diagnosed major depressive disorder, recurrent, without psychotic features and panic disorder with agoraphobia.  He assigned a

Global Assessment of Functioning ("GAF") score of 49.[2] *PAGEID* 518. According to Dr. Deardorff, plaintiff was moderately limited in her ability to relate to others, including co-workers and supervisors, moderately limited in her ability to understand, remember, and follow simple instructions, moderately limited in her ability to maintain attention, concentration, persistence, and pace and markedly limited in her ability to withstand the stress and pressures associated with day-to-day work activities. *PAGEID* 518-19.

In March 2010, Karla Voyten, Ph.D., reviewed the record relating to plaintiff's mental impairment on behalf of the state agency. *PAGEID* 521-38. According to Dr. Voyten, plaintiff is moderately limited in her abilities to understand and remember detailed instructions, carry out detailed instructions, complete a normal workday/week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number/length of rest periods, interact with the general public, and respond appropriately to changes in the work setting. *PAGEID* 521-22. Dr. Voyten also opined that plaintiff is mildly restricted in activities of daily living and has moderate difficulties in maintaining social functioning and concentration, persistence and pace.  PAGEID 535. Dr. Voyten disagreed with Dr. Deardorff's opinion that plaintiff was markedly limited in her ability to handle stress: "[m]oderate limits in this domain are more reasonable given her work history, [activities of daily

---

[2] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 45-50 indicates "severe symptoms ... or  serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...." *Id.*

living], and presentation at exam." *PAGEID* 523. According to Dr. Voyten, plaintiff can engage in short, repetitive tasks at a job where strict time/production pressures are not imposed and where there is less contact with the general public. *PAGEID* 524. State agency psychologist Marianne Collins, Ph.D., reviewed the record in July 2010 and affirmed Dr. Voyten's assessment. PAGEID 580.

Jannat Wolfe, LISW, first treated plaintiff on September 21, 2011. *PAGEID* 623-25. Plaintiff complained of long term depression and anxiety. Ms. Wolfe diagnosed moderate major depression. *PAGEID* 625. On October 6, 2011, Ms. Wolfe observed that plaintiff appeared to be fatigued and had a depressed affect. Plaintiff reported that medications were helping. *PAGEID* 622. On November 16, 2011, plaintiff again appeared fatigued and her affect was again depressed. However, plaintiff was motivated and reported that she was happy because her medications were not making her sleepy. *PAGEID* 621. Ms. Wolfe also assessed plaintiff's mental status. *PAGEID* 614-19. Ms. Wolfe noted plaintiff's diagnoses of major depression (moderate), and assessed a current GAF score of 70, which is indicative of only mild symptoms. Plaintiff's symptoms included anhedonia, appetite disturbance with weight change, decreased energy, feelings of guilt or worthlessness, mood disturbance, difficulty thinking or concentrating, emotional withdrawal or isolation, memory impairment and sleep disturbance. *PAGEID* 615. Ms. Wolfe commented that plaintiff's "[d]epressive symptoms combined with chronic pain make it hard for Delia to complete daily tasks." *PAGEID* 614. According to Ms. Wolfe, plaintiff is unable to meet competitive standards in the following areas: maintain attention for two hour segments, maintain regular attendance and be punctual within customary, usually strict tolerances, complete a normal

work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress and deal with the stress of semiskilled and skilled work. *PAGEID* 616.  Ms. Wolfe also concluded that plaintiff is seriously limited in her abilities to understand, remember and carry out detailed instructions. *Id.* Plaintiff is markedly limited in her activities of daily living and maintaining concentration, persistence, or pace. *PAGEID* 617. Plaintiff could be expected to be absent from work more than four days per month and her impairments were expected to last at least twelve months. *PAGEID* 619.

In December 2011, consulting psychologist Wes Crum, Ph.D., examined plaintiff on behalf the Department of Job and Family Services. *PAGEID* 635-39.  Dr. Crum noted a slow and altered gait, pain while walking, sitting, or standing, a guarded attitude, a constricted to flat affect, an inability to recall four objects after a 20-minute delay and an inability to complete serial sevens. Although plaintiff was alert during the exam, she was distracted.  *PAGEID* 636. Dr. Crum diagnosed pain disorder associated with both psychological factors and a general medical condition (chronic), major depressive disorder (single episode, severe, without psychotic features) and generalized anxiety disorder.  He assigned a GAF score of 45.  *PAGEID* 638. According to Dr. Crum, plaintiff is markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and set realistic goals or make plans independently of others. Dr. Crum concluded that plaintiff

9

was unemployable and her impairments could be expected to last for at least twelve months. *PAGEID* 634.

## IV. Administrative Decision

In his decision, the administrative law judge characterized plaintiff's severe impairments as major depressive disorder, NOS, narcolepsy, headaches, panic disorder with agoraphobia, degenerative disc disease, and chronic obstructive pulmonary disease ("COPD"). *PAGEID* 84. Plaintiff does not suffer an impairment or combination of impairments that meets or medically equals any listed impairment. *Id.* The administrative law judge specifically considered, but rejected, any suggestion that plaintiff is disabled under Listings 1.04 (disorders of the spine), 3.02 (COPD), 11.01 (neurological impairments), 12.04 (affective disorders) or 12.06 (anxiety related disorders). *PAGEID* 84-85. In particular, the administrative law judge determined that plaintiff's mental impairments neither meet nor medically equal the "B" or the "C" criteria of Listings 12.04 and 12.06. *PAGEID* 85-86. The administrative law judge found that plaintiff retained the residual functional capacity ("RFC")to perform light work, except that she can stoop, crouch, balance, kneel, crawl and climb ramps and stairs only occasionally. She cannot climb ladders, ropes or scaffolds and she should avoid concentrated exposure to pulmonary irritants (*i.e.,* fumes, odors, dusts, gases, poor ventilation, etc.). In considering plaintiff's mental impairments, the administrative law judge limited plaintiff to routine, repetitive tasks with only occasional decision-making and work place changes, no strict production standards or quotas and involving only occasional interaction with coworkers and supervisors and minimal contact with the public. *PAGEID* 86.

10

In making these findings, the administrative law judge did not give controlling weight to the opinion of plaintiff's treating physician, Dr. Able, characterizing her opinion as "not well supported by the medical evidence and . . . not consistent with the other substantial evidence of record." *PAGEID* 91. The administrative law judge also noted that Dr. Able rendered her opinion after she had treated plaintiff on only a few occasions. *Id.* Instead, the administrative law judge relied on the opinions of the state agency physician, Dr. Caldwell, and of the consulting psychologist, Dr. Deardorff. The administrative law judge accorded "great weight" to all of Dr. Deardorff's opinion except his conclusion that plaintiff is markedly limited in her ability to cope with stress. *PAGEID* 95. The administrative law judge gave limited weight to Dr. Ellison's opinion because "Dr. Ellison did not treat [plaintiff] but based his opinion on a one-time welfare basic medical examination that yielded minimal objective findings." *PAGEID* 92. The administrative law judge also gave little weight to the opinion of Dr. Crum, a consulting examiner, finding that his opinion was not well supported by any medical evidence. *PAGEID* 94.

The administrative law judge noted that Ms. Wolfe was not a psychologist or psychiatrist, and that her opinions were therefore owed no special deference. *PAGEID* 94. He gave "very little weight" to Ms. Phillips' opinions, explaining that Ms. Phillips "relied quite heavily on the subjective reports of symptoms and limitations" and "seemed to uncritically accept as true most, if not all, of what [plaintiff] reported." *PAGEID* 93. The administrative law judge also noted that Ms. Wolfe had a "very sparse and limited treatment" history with plaintiff, and that she had opined that plaintiff had been limited to an essentially disabling

degree since 1999, which was inconsistent with plaintiff's own claimed date of onset of disability. *Id.*

Relying on the vocational expert's testimony, the administrative law judge found that plaintiff is capable of performing a significant number of jobs in the national economy despite her impairments. *PAGEID* 96-97. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *PAGEID* 97-98.

**V.   DISCUSSION**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if

substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In her *Statement of Errors*, plaintiff contends that the administrative law judge erred in his residual functional capacity assessment. Plaintiff specifically asserts the following:

> The administrative law judge's contention that plaintiff's impairments were present in the same intensity while she was working, thus implying that her symptoms are not actually "work preclusive," is without support in the record. *Statement of Errors,* at *PAGEID* 658;

> The administrative law judge improperly failed to consider additional reports made by plaintiff as to her activities of daily living. *Id.* at *PAGEID* 659, 665-66;

> The administrative law judge's finding that plaintiff's treatment has been conservative and that medication has been effective in controlling plaintiff's symptoms is not supported by the record. *Id.* at *PAGEID* 661;

> The opinions of Drs. Able and Ellison and of Ms. Phillips should have been granted greater weight and, as so evaluated, would have supported a more restrictive RFC. *Id.* at *PAGEID* 662-65, 674-79;

> The administrative law judge erred in evaluating the opinions regarding plaintiff's mental impairments. Specifically, the administrative law judge erred by giving little or no weight to the opinions of plaintiff's counselor, Ms. Wolfe, and of Dr. Crum and by rejecting the work-preclusive portion of Dr. Deardorff's report. *Id.* at *PAGEID* 670-74.

Plaintiff contends that. Although "perhaps none of these errors individually would support a finding that the ALJ failed to rely on substantial evidence, . . . the sum of the errors committed should lead to that conclusion." *Statement of Errors*, *PAGEID* 658. *See also Reply*, *PAGEID* 707.

The Court will consider each of these contentions in turn.

A.

The administrative law judge commented:

13

> The claimant testified that she stopped working because she was terminated for not calling in rather than because of the allegedly disabling impairments.  In addition, a review of the claimant's work history shows that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset[] date.  The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work.

*PAGEID* 89. The administrative law judge made this comment while evaluating plaintiff's subjective complaints.  Read in context, it is clear that the administrative law judge was referring to the fact that plaintiff filed her current application for benefits shortly after her employment was terminated – not because of her impairments - but because of her failure to comply with the rules of her employment.  There is substantial support in the record for this finding, notwithstanding plaintiff's testimony that her pain would have precluded her continued work.  The Court concludes that the administrative law judge did not err in this regard.

B.

The administrative law judge considered plaintiff's activities of daily living at two points in his decision.  In considering plaintiff's mental impairments, the administrative law judge found that plaintiff was only mildly restricted in this area:

> At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), the claimant reported the following daily activities: able to attend to personal care tasks (bathing, grooming, toileting); prepares meals; performs household chores including laundry; shopping; driving; and watching television.

*PAGEID* 85. The administrative law judge also considered plaintiff's daily activities in assessing her credibility:

> With respect to the claimant's daily activities, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  Specifically, the Claimant prepares

14

> meals, performs household chores including laundry, shopping
> for grocery, and drives.  The claimant has alleged performing
> few, if any, household chores.  Yet I note that the claimant
> lives alone and has not reported any particular help in
> maintaining the residence or performing personal care tasks.
> It is also noteworthy that after a prior application for
> benefits, during which the claimant sought benefits for a closed
> period of disability, the claimant returned to work activity
> which she performed at the light or even higher level of exertion
> than found in a previous decision by an[] Administrative Law
> Judge. This despite her clams that her daytime sleepiness was
> problematic, and claims that she fell asleep after sitting only
> 5-10 minutes.

*PAGEID* 88-89. It is clear that the administrative law judge considered the

record as a whole, and his findings enjoy substantial support in the record.

The Court sees no error in this regard.

C.

The administrative law judge characterized plaintiff's treatment as

"essentially routine and/or conservative in nature."  *PAGEID* 89. In

explaining this finding, the administrative law judge went on to state:

> The claimant has been prescribed and has taken appropriate
> medications for the alleged impairments, which weighs in the
> claimant's favor, but the medical records reveal that the
> medications have been relatively effective in controlling eh
> claimant's symptoms.  I note that the claimant has not alleged
> any side effects from the use of medications.

*Id.* This finding is supported by plaintiff's own testimony that her pain

medication is effective, although she qualified that statement, *PAGEID*

115-16, and that her narcolepsy medication had been helpful in controlling

her symptoms, *PAGEID* 116. Most of plaintiff's treatment has been provided

by a nurse practitioner and a counselor and Dr. Able's treatment notes

reflect rather mild objective findings.  Again, the Court concludes that

the administrative law judge's finding in this regard enjoys substantial

support in the record.

15

D.

Plaintiff also complains about the administrative law judge's evaluation of the opinions of plaintiff's treatment providers regarding plaintiff's physical impairments.  According to plaintiff, the opinion of Dr. Able should have been granted controlling or at least great weight, *Statement of Errors, PAGEID* 662, and the opinions of Ms. Phillips and Dr. Ellison should have been granted greater weight, *Id. PAGEID* 663-64.

> [T]he opinions of Dr. Able, CNP Phillips, and Dr. Ellison are
> consistent with a more restrictive RFC than the one formulated
> by the ALJ.  They are inconsistent with the BDD examiners'
> opinions, but those individuals had no opportunity to examine
> Ms. Hosmer, and their opinions are inconsistent with the
> objective evidence . . . .

*Id.* PAGEID 664.

A medical opinion from a treating source must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The opinion of a non-treating, non-examining source is to be evaluated in light of all relevant factors, including the examining relationship (or lack thereof), the specialization of the medical source and the consistency and supportability of the opinion.  *Id.*

The administrative law judge declined to give controlling weight to Dr. Able's opinion, characterizing her opinion and extremely restrictive RFC evaluation as unsupported by the medical evidence and inconsistent with the other substantial evidence of record.

> It was rendered after the doctor saw the claimant only a few times
> during which little mention of back pain was made. . . . Dr.
> Able's opinion is rejected because there is persuasive
> contradictory evidence, specifically, the doctor's own
> treatment records, which do not contain objective medical
> evidence that would support the extreme functional limitations
> Dr. Able suggested.  Although Dr. Able's treatment notes show

16

a limping gait on the left and pain with palpation, the exam was otherwise within essentially normal limits, an[d] no actual objective abnormalities were noted.

*Administrative Decision*, *PAGEID* 92. The administrative law judge went on to review in detail Dr. Able's treatment notes, which provides support for his conclusion that "her opinion is not entitled to controlling or even significant weight." *Id.* Moreover, the administrative law judge found that Dr. Able's assessment of plaintiff's mental impairments "appears to rest at least in part on an assessment of an impairment outside of the doctor's expertise." *Id. PAGEID* 92.

The Commissioner must provide "good reasons" for discounting the opinion of a treating source, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *See Bass v. McMahon, 499 F.3d 506*, 511 (6th Cir. 2007). The administrative law judge met this standard in giving Dr. Able's opinion "very little weight." *Administrative Decision*, PAGEID 92.

The administrative law judge also gave very little weight to the extremely restrictive assessment by Dr. Ellison, who examined plaintiff on one occasion.  As noted by the administrative law judge, Dr. Ellison's findings, which included a reduced range of motion, tenderness to palpation and complaints of pain upon motion, did not include "a straight leg test or sensory exam" and relied heavily on plaintiff's subjective complaints. *Id. PAGEID* 93. The administrative law judge's finding that Dr. Ellison's opinion was not supported by the objective medical findings is itself supported by the evidence of record.

Nurse practitioners are not included in the list of acceptable medical sources found in the Commissioner's regulations.  20 C.F.R. § 416.913(a).

17

The opinions of nurse practitioners, even those who treat a claimant, are therefore not entitled to the controlling weight or deference to which the opinions of treating physicians are ordinarily entitled. *See* 20 C.F.R. § 416.927(d). However, evidence from other sources, including nurse practitioners, may be considered "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work. . . ." 20 C.F.R. § 416.913(d)(1). Among the factors to be considered in evaluating the opinions of "other sources" are the length of time and frequency of treatment, consistency with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, whether the source has a special expertise and any other factor supporting or refuting the opinion. SSR 06-03p, 2006 WL 2329939, *4 – 5 (August 9, 2006).

The administrative law judge evaluated Ms. Phillips' opinion by reference to the appropriate standard.

> Nurse Phillips apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, the objective evidence shows very minimal findings to support the limitations. Specifically, the office treatment notes from November 2009 to May 2010 showed decreased range of motion, but the claimant had normal gait. There was no weakness or paralysis. There was no evidence of pain, swelling, tenderness or redness.

*Id. PAGEID* 93. Her opinion was therefore given very little weight. *Id.* The administrative law judge's decision in this regard is supported by substantial evidence.

Likewise, the decision to accord significant weight to the assessments and opinions of the state agency physicians enjoys substantial support in the record. Specifically, the administrative law judge characterized the state agency assessments and opinions as consistent with

18

the evidence, which documented "very few objective abnormalities, or even consistent complaints of disabling physical symptoms." *Id. PAGEID* 94. This Court concludes that the administrative law judge did not err in this regard.

E.

Plaintiff also complains about the administrative law judge's evaluation of the opinions regarding plaintiff's mental impairments. Specifically, plaintiff contends that the administrative law judge should have given greater weight to the opinions of plaintiff's counselor Ms. Wolfe and of Dr. Crum and should not have rejected the work-preclusive portion of Dr. Deardorff's report.

The administrative law judge found that, from a mental standpoint, plaintiff has the residual functional capacity to perform routine, repetitive tasks with occasional decision-making and work place changes without strict production standards or quotas and with only occasional interaction with coworkers and supervisors and minimal contact with the public. *Id*. *PAGEID* 86.

The administrative law judge gave only little weight to Ms. Wolfe's extremely restrictive assessment, finding that the counselor had only a brief treatment relationship with plaintiff and noting, *inter alia*, that Ms. Wolfe's assessment suggested that plaintiff's extreme limitations had existed since 1999, *i.e.,* at a time that plaintiff engaged in substantial gainful employment.  *Id. PAGEID* 94. The administrative law judge carefully considered this "other source" opinion, applied the appropriate standards and clearly articulated his reasons for according little weight to Ms. Wolfe's extremely restrictive assessment.  This Court is without authority to disturb his findings in this regard.

19

The administrative law judge also gave little weight to the assessment of consulting psychologist Dr. Crum, finding that his opinion is not well supported by the medical evidence:

> [A]lthough the psychological evaluation indicates the claimant's attention and concentration skills are not strong, a review of the claimant's activities of daily living, work history, and intelligence level indicates that the claimant is not precluded from simple, routine tasks with a job that has no strict time/production quotas. Moreover, there is no indication in the record that the claimant is "markedly" limited in her ability to set realistic goals or make plans independently of others. I note that the claimant came to the psychological evaluation alone and her cognitive functioning was adequate, as she appeared to have an adequate fund of knowledge and her mode of thinking appeared fluid.

*Id.* PAGE 94-95. The administrative law judge also found that Dr. Crum's evaluation relied to a substantial degree on plaintiff's subjective complaints which the administrative law judge had previously found were not entirely credible. *See id.* PAGEID 88. Again, this Court concludes that there is substantial support in the record for the administrative law judge's findings in this regard.

The administrative law judge gave "significant weight" to the state agency reviewing psychologist Dr. Voyten. *Id. PAGEID* 95. The administrative law judge also gave "great weight" to Dr. Deardorff's evaluation except the portion that suggested that plaintiff is markedly limited in her ability to deal with stress. *Id.* In this regard, the administrative law judge relied on Dr. Voyten's comment that such a restriction is inconsistent with plaintiff's "treatment or work history, her ability to perform activities of daily living, and [her] presentation during examination." *Id.* This evaluation enjoys substantial support in the record.

Having carefully reviewed the careful and lengthy decision of the administrative law judge, the Court concludes that his decision applied all appropriate standards and finds substantial support in the record. The fact that the record might also support a contrary decision does not, of course, warrant rejection of the final decision of the Commissioner. *See Longworth, supra*, 402 F.3d at 595.

F. Finally, plaintiff contends that the "sum of errors" committed by the administrative law judge warrants reversal of the decision of the Commissioner. Because, for the reasons state *supra*, the Court concludes that the administrative law judge did not err in concluding that plaintiff is not disabled, it follows that reversal on this basis is unwarranted.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that this action be **DIMSISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local*

*231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: July 3, 2014                          *s/Norah McCann King*
                                            Norah McCann King
                                            United States Magistrate Judge

22